UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHICAGO TRANSIT AUTHORITY RETIREE HEALTH CARE TRUST and THE BOARD OF TRUSTEES FOR THE CHICAGO RETIREE HEALTH CARE TRUST,<br><br>Plaintiffs,<br><br>v.<br><br>DILWORTH PAXSON LLP and TIMOTHY ANDERSON,<br><br>Defendants. | Case No. 19-cv-07570<br><br>Honorable Mary M. Rowland |

**DEFENDANTS DILWORTH PAXSON LLP'S AND TIMOTHY B. ANDERSON'S MEMORANDUM OF LAW IN SUPPORT OF THEIR RULE 12(B)(6) MOTION TO DISMISS THE COMPLAINT**

Plaintiffs seek to recover funds they invested in bonds issued by a sovereign tribal entity associated with the Oglala Sioux Tribe. But their Complaint is not against that entity, nor against the individuals who were convicted of criminally misappropriating their funds and defrauding them, *i.e.*, Jason and John Galanis and their accomplices. Nor is it against the investment advisor Plaintiffs hired, Hughes Capital Management, LLC ("HCM"), that recommended the bond investment and managed Plaintiffs' retirement funds as their fiduciary. Instead, Plaintiffs seek to foist responsibility on Dilworth Paxon LLP, the lawyers who handled the routine aspects of the bond transaction (the "Firm") and in particular a Firm partner, Timothy B. Anderson ("Anderson") (collectively, "Dilworth"). Dilworth had nothing to do with Plaintiffs' investment. Dilworth also never represented Plaintiffs and had no other duty to them. Plaintiffs have failed to state plausible claims against Dilworth and their Complaint should be dismissed with prejudice under Federal Rule of Civil Procedure 12(b)(6).

## I. BACKGROUND

Plaintiffs entered into an Investment Management Agreement (the "RHCT Agreement") with non-party HCM, a registered investment advisor, in 2009; HCM was responsible for managing retirement funds for Plaintiff Chicago Transit Authority Retiree Health Care Trust ("RHCT"). (Complaint ¶¶ 19, 21) Plaintiffs allege that HCM purchased bonds issued by Wakpamni Lake Community Corporation, a tribally-chartered corporation associated with the Oglala Sioux Tribe of the Pine Ridge Reservation in South Dakota. (*Id*. ¶¶ 37, 185, 221)

As Plaintiffs allege, the proceeds of these bonds were misappropriated by Jason Galanis and his accomplices, including Hugh Dunkerley ("Dunkerley"), none of whom Plaintiffs have sued. (*Id*. ¶¶ 31, 240) Dunkerley was the president of Burnham Securities, Inc. ("Burnham"), a brokerage firm in New York which acted as the placement agent for the bonds, and whom Plaintiffs also have not sued. (*Id*. ¶¶ 50, 55) Dunkerley and Jason Galanis pleaded guilty to crimes for their roles in the Wakpamni bond offering. (*Id*. ¶¶ 307, 312) Others, including John Galanis, Jason's father, were found guilty by jury. (*Id*. ¶ 312) Plaintiffs also did not sue any of these convicted felons, instead targeting the lawyers involved in documenting the transactions.

Plaintiffs allege that Dilworth's work as counsel for the bond offering was used by Dunkerley and Jason Galanis to facilitate the sale of the bonds. The operative facts are that Dilworth allegedly drafted a portion of an initial draft of an Investor Letter which it sent to HCM – but which HCM later completed independently and used in the transaction – and allegedly made a few ministerial telephone calls about wire transfer arrangements. (*Id*. ¶¶ 158-61, 229) According to the Complaint, HCM breached its fiduciary duties to Plaintiffs by completing the Investor Letter. (*Id*. ¶¶ 169, 332)

Additionally, Plaintiffs allege that Opinion Letters prepared for U.S. Bank by Dilworth and

Greenberg Traurig, LLP[1] relied upon the HCM Investor Letter for some of the facts and were necessary for completion of the transaction. (*Id*. ¶¶ 188, 191-92, 253, 262) Dilworth's Opinion Letter for the first bond closing (Dkt. 1-1 at 174 (Opinion Letter)) expressly identified that it relied on information contained in the HCM Investor Letter relating to each investor's status as an "accredited investor" under securities laws. (Complaint ¶ 197) The Opinion Letter also stated that the Bonds were being issued to fund an Annuity Investment (*id*. ¶ 192) pursuant to an annuity contract – that Dilworth had no part in drafting – which recited that the annuity would be issued to Wealth Assurance Private Client Corporation ("WAPCC"). (*Id*. ¶¶ 97, 131)

As to the mundane communications about details for wire instructions, Plaintiffs allege that, after U.S. Bank closed the transaction, Jason Galanis emailed Anderson wire instructions regarding distribution of the bond proceeds, including for making the annuity payment to a bank account that Jason Galanis said belonged to WAPCC. (*Id*. ¶ 226) Plaintiffs allege that Dilworth forwarded the wire instructions and the annuity contract to U.S. Bank, which initiated the wire transfer. (*Id*. ¶ 229) Once U.S. Bank wired the funds, "Jason Galanis and Dunkerley immediately misappropriated the bond proceeds through a complex series of transactions to related entities and individuals." (*Id*. ¶ 240) There are no allegations – nor could there be – that Dilworth was involved in the misappropriation of Plaintiffs' funds, or that Dilworth had any knowledge of what happened to the funds after U.S. Bank wired them, or that Dilworth had anything to gain by the Galanis' misconduct that led to the loss of Plaintiffs' funds, *i.e.*, the fraud and misappropriation of funds by people Plaintiffs have chosen not to sue.

Plaintiffs instead sued Dilworth for purported (1) negligence, (2) aiding and abetting a breach of fiduciary duty, (3) civil conspiracy, and (4) tortious interference with contract. (Dkt. 1-

---

[1] Plaintiffs also sued Greenberg Traurig, LLP, and subsequently settled with them and dismissed their claim. (Dkt No. 49)

1 at 6-57) This case was removed to this Court on the basis of diversity jurisdiction by Greenberg Traurig and remains in this Court. (Dkt. No. 1 at 1)

## II. LEGAL STANDARD

As is familiar to the Court, when deciding a motion to dismiss the Court construes the complaint in the light most favorable to plaintiff and accepts all factual assertions as true.[2] As is equally familiar, however, the Court does not accept conclusory allegations or conclusions of law dressed up as facts. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949–50 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (citing *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). This standard demands that the factual allegations "raise a right to relief above the speculative level" and "nudge[] the[] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570. As the Seventh Circuit has held, courts must reject mere "legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Alam v. Miller Brewing Co*., 709 F.3d 662, 665–66 (7th Cir. 2013).

Additionally, claims that sound in fraud are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *See F.D.I.C. v. Parzygnat*, No. 10 C 7038, 2011 WL 3704731, at *8 (N.D. Ill. Aug. 23, 2011). Under this standard, a plaintiff alleging fraud must state with "particularity" the circumstances constituting fraud. *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 668 (7th Cir. 2008). "This heightened pleading requirement is a response to the great harm to the reputation of a business firm or other enterprise a fraud claim can do." *Borsellino v. Goldman Sachs Group, Inc*., 477 F.3d 502, 507 (7th Cir. 2007). Rule 9(b) applies to each of Plaintiffs' claims other than negligence.

---

[2] For this reason, Dilworth bases its recitations of facts on Plaintiffs' allegations. But Dilworth denies the substance of Plaintiffs' claims and will demonstrate their falsity if the case were to proceed.

4

### III. ARGUMENT

**A.     Plaintiffs Fail To State a Claim for Negligence.**

To state a negligence claim under Illinois law, a plaintiff must allege facts sufficient to demonstrate "that the defendant owed a duty to the plaintiff, that defendant breached that duty, and that the breach was the proximate cause of the plaintiff's injuries." *Blood v. VH-1 Music First*, 668 F.3d 543, 546 (7th Cir. 2012). Plaintiffs' claim fails on each element.

First, Plaintiffs invent a theory that Dilworth owed Plaintiffs, who were not Dilworth's clients, a duty of care in preparing the opinion letters and when assisting in the bond transaction. (Complaint ¶¶ 318-20) That begs the question of the duty, if any, Dilworth might owe to someone other than its client. It is well-established that an attorney owes no duty to anyone other than its client; the sole exception is "*only in the most limited circumstances*." *Bastian v. Petren Res. Corp.*, 271 Ill. App. 3d 232, 238, 648 N.E.2d 165, 169 (1995) (emphasis added). Specifically, those "most limited circumstances" are when the nonclient can "allege and prove that the intent of the [attorney's actual] client to benefit the nonclient third party was the primary or direct purpose of the transaction or relationship." *Pelham v. Griesheimer*, 92 Ill. 2d 13, 20-21 (1982); *see also Oakland Police & Fire Retirement System v. Mayer Brown, LLP*, 861 F.3d 644, 650 (7th Cir. 2017); *Geaslen v. Berkson, Gorov & Levin, Ltd.*, 220 Ill. App. 3d 600, 163 Ill. Dec. 187, 581 N.E.2d 138, 142 (1991) (duty to nonclient plaintiff found where opinion letter was addressed to plaintiff).

Second, Plaintiffs do not allege a breach of a duty to them. The Dilworth Opinion Letter on which Plaintiffs rely was, as shown on its face, intended for U.S. Bank, Burnham Securities, and Wakpamni Lake Community Corporation; Plaintiffs are not mentioned by name, category or otherwise. (Dkt. 1-1 at 174) The Complaint alleges that the only entity who relied on the Opinion

5

Letter is U.S. Bank, the party to whom it was addressed. (Complaint ¶ 328) Dilworth owed no duty to Plaintiffs and, thus, could not have breached any duty.

Third, Plaintiffs' negligence claim fails because there are no facts plausibly alleged that Dilworth's few actions were the proximate cause of Plaintiffs' injury. Plaintiff must show "a nexus between the negligent act or omission and the injury suffered." *Taylor v. Gerry's Ridgewood, Inc.*, 141 Ill. App. 3d 780, 782, 490 N.E.2d 987, 990 (1986). The Complaint does not, and cannot, do so. Plaintiffs do not allege that *they* relied upon the Opinion Letter, and this is further evidence that the letter was not a proximate cause of their alleged injuries. Instead, Plaintiffs allege that "[w]ithout opinion letters from both firms, U.S. Bank would not have closed the transaction and the bondholders, including [Plaintiffs], would not have been injured." (Complaint ¶ 188) But this is far from sufficient. Proximate cause encompasses both cause in fact – whether the defendant's conduct was a material element and a substantial factor in bringing about the injury – and legal cause, which is a question of foreseeability. *Fitzgibbon v. Nat'l Broad. Co.*, 314 Ill. App. 3d 52, 54, 732 N.E.2d 64, 65–66 (2000). Although the Complaint concludes that Dilworth's alleged negligence caused U.S. Bank to close the transaction, there are no facts alleged to support that conclusion. And for purposes of cause in fact, the Complaint does not allege the Opinion Letter to be a substantial factor in bringing about Plaintiffs' injury. That injury, of course, was caused by the criminal actors, whom Plaintiffs acknowledge are the parties who "immediately misappropriated the bond proceeds through a complex series of transactions to related entities and individuals." (Complaint ¶ 240)

For legal cause, "[f]oreseeability may be decided by the court as a matter of law where the issue is so clear that reasonable minds could not differ." *Sobilo v. Manassa*, 479 F. Supp. 2d 805, 818 (N.D. Ill. 2007). "[T]he test that should be applied in all cases in determining the question of

6

proximate cause is whether the first [alleged] wrongdoer might have reasonably anticipated the intervening cause as a natural and probable result of the first party's own negligence." *Janowiak v. Tiesi*, 402 Ill. App. 3d 997, 1011, 932 N.E.2d 569, 583 (2010).  Here, Plaintiffs acknowledge that the intervening cause of Plaintiffs' injury is the fraud and misappropriation of funds by the Galanis crew.  (Complaint ¶ 240)  There are no facts alleged that these criminal acts were foreseeable or that Dilworth was involved in the criminal acts.  Just because there is crime in the world does not mean that it was foreseeable that a particular crime would be committed by particular criminals in a particular circumstance, *i.e.*, that the Galanises and their accomplices would intentionally steal $40 million dollars.  *See, e.g.*, *Rowe v. State Bank of Lombard*, 125 Ill. 2d 203, 224, 531 N.E.2d 1358, 1368 (1988) (holding generally a criminal act is a superseding cause of injury relieving the originally negligent party of liability).  The closest the Complaint comes to addressing foreseeability is alleging the bond transaction was "risky" (Complaint ¶¶ 332-33), but that is far from enough to make the theft of $40 million dollars reasonably foreseeable. *Lutz v. Goodlife Entm't, Inc*., 208 Ill. App. 3d 565, 569, 567 N.E.2d 477, 480 (1990) ("[T]here must have been more th[a]n a possibility that the act was foreseeable; the act must have been reasonably foreseeable.").  Even had Dilworth owed a duty to Plaintiffs – it did not – the Galanis' criminal acts were an intervening cause that broke the causal chain necessary to state a claim for negligence against the scrivening lawyers.

Nor could Plaintiffs allege facts that would plausibly state such a claim, which is why Plaintiffs should not be permitted to amend their claims to allege new facts.  Leave to amend is futile where the plaintiff cannot plead the essential elements of a claim upon amendment.  *See Bogie v. Rosenberg*, 705 F.3d 603, 613 (7th Cir. 2013).  Plaintiffs could not add allegations to establish that Dilworth owed a duty to Plaintiffs based on the Opinion Letter that plainly was not

7

addressed to, or relied upon by, Plaintiffs. Nor could Plaintiffs cure the unforeseeability of the intervening criminal act. *See Grant v. Schmidt*, 787 F. App'x 345, 347 (7th Cir. 2019) ("[A]mendment to add allegations . . . would be futile because [the plaintiff] cannot plausibly allege that the defendants could reasonably foresee that [the actual wrongdoer] would commit a new crime."). Accordingly the negligence claim should be dismissed with prejudice. *Bogie*, 705 F.3d at 613; *Garcia v. City of Chicago*, 24 F.3d 966, 970 (7th Cir. 1994).

**B.      Plaintiffs' Other Claims Are Entirely Premised on Conclusory Allegations and Fail To Meet the Plausibility Standard**

Plaintiffs' remaining claims rest entirely on the unsupported and implausible notion that Dilworth, whom Plaintiffs allege to be sophisticated (Complaint ¶ 335), competent (*id*. ¶ 358), and knowledgeable (*id*. ¶ 342) counsel intended to assist John Galanis and HCM to steal Plaintiffs' funds. Plaintiffs do not allege such facts, nor can they; their contentions seeking to tie Dilworth to the theft of Plaintiffs' funds by convicted fraudsters are wholly conclusory and amount to no more than "naked assertions devoid of further factual enhancement." *Taha v. Int'l Bhd. of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020). When considering the viability of a claim in the face of a Rule 12(b)(6) challenge, the Court must reject such sheer supposition. *Id*.

The facts that Plaintiffs do allege demonstrate only that Dilworth, acting in the traditional role of bond counsel, prepared a portion of one letter later completed by HCM, provided an opinion letter addressed to U.S. Bank on which Plaintiffs did not rely, and conveyed communications about wire instructions. (Complaint ¶¶ 68, 161, 187, 229; Dkt. 1-1 at 174) None of that supports that Dilworth would be complicit in the theft of Plaintiffs' funds or the Galanis' fraud. Rather, Plaintiffs' allegations give rise to the "obvious alternate explanation" that Dilworth acted lawfully in its role as bond counsel and that it was the acts of others, many of whom are serving decades-long prison sentences, that caused Plaintiffs' injury. *See Iqbal*, 129 S.Ct. at 1951–52 (holding that

8

plausibility was not met where there was an "obvious alternate explanation"). Plaintiffs simply cannot "give enough details about the subject-matter of the case to present a story that holds together." *McCauley v. City of Chicago*, 671 F.3d 611, 616–17 (7th Cir. 2011).

Nor can Plaintiffs rely on inferences from these scant facts to state their other three claims. Since all three of Plaintiffs' remaining claims sound in fraud, they must be pled with additional particularity under Rule 9(b). *Desmond v. Taxi Affiliation Servs. LLC*, 344 F. Supp. 3d 915, 923 (N.D. Ill. 2018) (Rule 9(b) applies to claims that "sound[ ] in fraud," meaning those "premised upon a course of fraudulent conduct."). Plaintiffs' claims of aiding and abetting breach of fiduciary duty, tortious interference, and conspiracy to commit fraud "all arise out of the same alleged fraudulent scheme." *See id*. at 924 (finding claims of breach of fiduciary duty and tortious interference with contract both sounded in fraud when related to a single fraudulent scheme); *see also F.D.I.C.*, 2011 WL 3704731, at *8 (holding tortious interference with contract claim sounded in fraud). Plaintiffs must state with particularity the circumstances constituting the allegedly tortious conduct. *See Windy City Metal*, 536 F.3d at 668 ("The circumstances of fraud or mistake include the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff."). Having failed to do so, these three remaining counts must be dismissed as well.

1. **Plaintiffs Fail To State a Claim for Aiding and Abetting.**

Plaintiffs' conclusory claim for aiding and abetting HCM's breach of HCM's fiduciary duties to Plaintiffs is plainly implausible. Under Illinois law, aiding and abetting is not a separate tort; it is a theory of liability. *F.D.I.C.,* 2011 WL 3704731, at *6. The elements for this theory are: "(1) the party whom the defendant aids must perform a wrongful act which causes an injury; (2) the defendant must be regularly aware of his role as part of the overall or tortious activity at

9

the time that he provides the assistance; and (3) the defendant must knowingly and substantially assist the principal violation." *Id*. at *7. Plaintiffs do not allege facts demonstrating that Dilworth sought to aid HCM in HCM's actions in breach of the duty that HCM owed to Plaintiffs as their investment advisor, which ends the aiding and abetting claim.

Making a conclusory allegation that Anderson and the Firm were aware of "the role they were playing in causing HCM to breach its fiduciary duties, particularly given their status as commercial attorneys knowledgeable of such matters" (Complaint ¶ 342), does not cure the pleading deficiency. There are no *facts* that satisfy Rule 9(b) to show that Dilworth was "regularly aware of its role as part of the [Galanis'] overall or tortious activity" or that Dilworth was doing anything with knowledge that it was being misused by HCM to facilitate the Galanis' fraud. The Complaint merely restates part of the elements of an aiding and abetting claim (not even the entirety of each element, such as that Dilworth was "regularly aware" of its purported role). The only plausible inference to be drawn from Plaintiffs' non-conclusory allegations under Rule 9(b) is "the obvious alternate explanation" that Dilworth's true "role" was as bond counsel in service of a routine transaction, acting independently from HCM's alleged tortious activity rather than aiding and abetting it. *See Iqbal*, 129 S.Ct. at 1951–52.

Due to the potential for abuse in dragging innocent parties like Dilworth into another's misconduct, Illinois courts have held that aiding and abetting liability should not be expanded to include parties who were simply doing their jobs and performing tasks that they typically performed in the ordinary course of business. *See, e.g., Thornwood, Inc. v. Jenner & Block*, 344 Ill. App. 3d 15, 278 Ill. Dec. 891, 799 N.E.2d 756, 767 (Ill. App. 2003), as recognized by *Premier Capital Mgmt., LLC v. Cohen*, No. 02 C 5368, 2008 WL 4378313, at *6 (N.D. Ill. Mar. 24, 2008); *see also Schott v. Glover*, 109 Ill. App. 3d 230, 235, 440 N.E.2d 376, 379 (1928) (holding that as

10

a matter of public policy, attorneys are generally left free to advise their clients without fear of personal liability to third persons). In *Premier Capital Mgmt.*, a bank and its president were held not liable for allegedly aiding and abetting a breach of fiduciary duty where they did not directly aid in the alleged tortious activity (inducing investment of funds) and instead performed administrative tasks such as processing fund transfers. 2008 WL 4378313, at *6. Similarly, Dilworth's role as bond counsel was in service of what appeared to be routine transactions, not as HCM's accomplice in the Galanis' misappropriation and fraud.

As the court in *Premier Capital Mgmt.* also found, "behavior [such as the administrative task of processing fund transfers in that case] is not active and direct; it is passive and indirect, and that is not enough to sustain an aiding and abetting a breach of fiduciary duty claim." *Id.* *Premier Capital Mgmt.* disposes of Plaintiffs' allegations that Dilworth prepared portions of an initial draft of the investor letter (but not the final letter[3]) and conveyed the mundane details for wire transfers. (Complaint ¶¶ 158-61, 338-39) Such passive ministerial actions are not enough to place Dilworth in a position of assisting HBC in HBC's breach of its duty to Plaintiffs. Nor can such allegations plausibly support the inference that Dilworth aided and abetted HBC's breach of its fiduciary duty, and amendments consistent with the facts actually alleged would be futile, making it appropriate to dismiss with prejudice. *See Moorer v. Platt*, No. 18 CV 3796, 2020 WL 814924, at *2 (N.D. Ill. Feb. 19, 2020) (amendment was futile where the claim was not plausible).

## 2. Plaintiffs Fail To State a Claim for Civil Conspiracy.

As implausible as their aiding and abetting claim, if not more so, Plaintiffs' civil conspiracy claim is based on the conclusory allegation that "Anderson agreed to take direction from John

---

[3] There are no allegations specifying the content of Dilworth's alleged initial draft. (Complaint ¶¶ 160-63) Therefore, any allegations that Dilworth's alleged draft substantially assisted the eventual breach of the fiduciary duty are entirely speculative and not plausible. *See Twombly*, 550 U.S. at 555, 570.

11

Galanis and assisted him in perpetuating the annuity fraud on U.S. Bank and the bondholders themselves." (Complaint ¶ 351)  Once again, no facts about the details of that supposed "agreement" are alleged as required by Rule 9(b). "To state a claim for civil conspiracy, a plaintiff must allege *facts establishing* that: (1) the defendant entered into an agreement with one or more persons to accomplish by concerted action either an unlawful purpose or a lawful purpose by unlawful means; (2) a tortious act was committed in furtherance of the agreement; and (3) the plaintiff suffered an injury that was caused by the defendant." *Merrilees v. Merrilees*, 2013 IL App (1st) 121897, ¶ 49 (emphasis added).  Plaintiffs simply do not allege *facts establishing* any of these elements.  Because conspiracy is not an independent tort, if "a plaintiff fails to state an independent cause of action underlying [the] conspiracy allegations, the claim for conspiracy also fails." *Id*.

Indeed, there are no facts that plausibly establish that Anderson agreed to *anything* with John Galanis, let alone agreeing to help him steal Plaintiffs' funds.  To enter into a conspiracy, Defendants must have "under[stood] the general objectives of the conspiratorial scheme, accept[ed] them, and agree[d], either explicitly or implicitly to do its part to further those objectives." *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 938–39 (7th Cir. 2012).  Without *facts establishing* such an agreement, Plaintiffs' conspiracy claim fails.  Here, Plaintiffs have not alleged facts that Dilworth even knew about the unlawful objectives of Galanis' scheme – let alone agreed to advance those objectives.  It is too far a leap from Plaintiffs' assertion – without any factual support – that Anderson believed the proposed transaction was "risky" or "speculative" (Complaint ¶ 333) to infer that Anderson knew he was aiding Galanis' criminal enterprise.

Plaintiffs also do not allege tortious acts in furtherance of the purported agreement with the

12

convicted felon, which is the second element of the civil conspiracy claim. Since Plaintiffs describe a conspiracy to commit *fraud* (*see* Complaint ¶ 351 (alleging Anderson agreed to assist John Galanis in the "annuity fraud")), the tortious action must be "an overt act of fraud in furtherance of the conspiracy." *GMAC, LLC v. Hillquist,* 652 F. Supp. 2d 908, 922 (N.D. Ill. 2009). Under Rule 9(b), the underlying fraud must be alleged including the specific circumstances constituting the fraud. *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 734 (7th Cir. 2017). The Complaint alleges none of the five elements that are required to tie the fraud to Dilworth, *i.e.*, (1) a false statement of material fact by Dilworth; (2) Dilworth's knowledge or belief that the statement was false; (3) Dilworth's intent to induce the Plaintiffs to act; (4) action by the plaintiffs in justifiable reliance on the truth of Dilworth's statement; and (5) damage to the Plaintiffs resulting from their reliance on Dilworth's statements. *Mullen v. GLV, Inc.*, No. 18 C 1465, 2020 WL 5630455, at *6 (N.D. Ill. Sept. 20, 2020).

Instead, Plaintiffs simply rattle off a list of general actions, none of which specifies any fraud. The best they offer is that "Anderson acted in furtherance of the agreement by preparing bond documents, coordinating closing, concealing Galanis' role in the transaction, assisting HCM in the transaction, and directing U.S. Bank to transfer bond proceeds to Jason's bank account." (Complaint ¶ 352) There are no facts alleged about how Dilworth supposedly did any of this, let alone that Dilworth had any duty to convey anything about who was involved in the transaction or how. *See supra* at 5-7. Plaintiffs also do not – and cannot – allege facts supporting their own reliance on any of Dilworth's actions, none of which were directed at Plaintiffs in any event. When a claim cannot be plausibly alleged, dismissal with prejudice is required.

      **3.**      **Plaintiffs Fail To State a Claim for Tortious Interference with Contract.**

Plaintiffs' tortious interference claim is based on the threadbare assertion that Dilworth

"assist[ed] HCM in carrying out the purchase of the Wakpamni bonds" and "tortiously induced a breach of the RHCT Agreement by HCM." (Complaint ¶ 363) Very similar to the empty claim for purportedly aiding and abetting HCM's breach of its fiduciary duty, *supra* at 9-11, these allegations are merely recitals of the elements of the cause of action, not facts that could be accepted by the Court. And they are equally implausible.

Under Illinois law, the elements for a tortious interference with contract claim include: defendant's intentional and unjustified inducement of a breach of the contract; and a subsequent breach by the other, caused by the defendant's conduct. *F.D.I.C.*, 2011 WL 3704731, at *8; *Webb v. Frawley*, 906 F.3d 569, 579 (7th Cir. 2018). As with their other claims, Plaintiffs fail to allege any facts in support of these elements, let alone any that "raise a right to relief above the speculative level" and "nudge[] the[] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570.

Once again, the facts Plaintiffs allege are that Dilworth forwarded wire instructions to HCM employees and assisted with drafting an initial portion of an Investment Letter – allegations that demonstrate neither any intent to induce a breach by HCM or that HCM's breach was caused by Dilworth. (*See* Complaint ¶¶ 161, 229) As the Seventh Circuit held in affirming dismissal of a tortious interference claim where defendant was not an active participant in the alleged breach, intent to induce "requires some active persuasion, encouragement, or inciting that goes beyond merely providing information in a passive way." *Webb*, 906 F.3d at 579.

It is simply not plausible that Dilworth acted with the aim of causing HCM's breach of the RHCT agreement. There is no reason why Dilworth, as bond counsel, would want to interfere with the RHCT contract between Plaintiffs and their chosen investment advisor, or would have any reason to induce a breach of that contract. No factual allegations in the Complaint make this

14

story hold together. *See McCauley v. City of Chicago*, 671 F.3d 611, 616–17 (7th Cir. 2011). Plaintiffs' allegations give rise only to the "obvious alternate explanation" that Dilworth acted lawfully in its role as bond counsel and that it was the acts of others that caused Plaintiffs' injury. *See Iqbal*, 129 S.Ct. at 1951–52.

Nor are there any allegations that could be added to ground this farfetched notion in the realm of plausibility, and the claim should be dismissed with prejudice. *See Miller v. Madigan*, No. 15-CV-1181-NJR, 2015 WL 7178431, at *4 (S.D. Ill. Nov. 16, 2015) (dismissing with prejudice where the court could not "conceive of any viable theory of liability that [p]laintiff might assert against the named [d]efendants").

## IV. CONCLUSION

For the foregoing reasons, Dilworth Paxson LLP and Timothy Anderson respectfully request that this Court dismiss Plaintiffs' claims against them with prejudice.

Dated: December 23, 2020

Respectfully submitted,

*/s/* Michael Dockterman

Michael Dockterman
(Illinois Bar No. 3121675)
Stacie R. Hartman
(Illinois Bar No. 6237265)
Steptoe & Johnson LLP
227 W. Monroe St., Suite 4700
Chicago, IL 60606
Phone: (312) 577-1300
mdockterman@steptoe.com
shartman@steptoe.com

*Attorneys for Defendants Dilworth Paxson LLP and Timothy Anderson*

## CERTIFICATE OF SERVICE

I, Michael Dockterman, an attorney, hereby certify that on December 23, 2020, I caused a true and correct copy of the foregoing **DEFENDANTS DILWORTH PAXSON LLP'S AND TIMOTHY B. ANDERSON'S MEMORANDUM OF LAW IN SUPPORT OF THEIR RULE 12(B)(6) MOTION TO DISMISS THE COMPLAINT** to be electronically filed with the Clerk of Court using CM/ECF, which will serve all counsel of record.

/s/ Michael Dockterman

Michael Dockterman
Steptoe & Johnson LLP